The next case today is Robert Frese v. John M. Formella, Appeal No. 21-1068. Attorney House, please introduce yourself for the record and proceed with your argument. May it please the Court. My name is Brian House, and I represent Appellant Robert Frese. With the Court's permission, I'd like to reserve three minutes for rebuttal. Yes. New Hampshire's criminal defamation law makes it a crime to tell a lie knowing that it will tend to injure someone's reputation among some group of people somewhere. If it were robustly enforced, there would be thousands of prosecutions every year. Of course, nobody expects the government to prosecute most instances of gossip, venting, and other sorts of loose talk. But the Act fails to draw any discernible line between the sorts of loose talk that are criminal and those that are not. Instead, it leaves those decisions to the unfettered discretion of law enforcement. The Due Process Clause requires the legislature to provide a more definite standard when it proposes to criminalize speech. Unfortunately, the District Court dismissed this case three days before the close of discovery, after abusing to consider any statutory context or evidence regarding the Act's enforcement. The Court should reverse and remand so that Mr. Frese's vagueness claim can be properly adjudicated on the basis of a developed record. So I'd like to start by addressing the degree of vagueness scrutiny that should apply here, because we believe the District Court did not apply a sufficiently stringent test. The Supreme Court has instructed in cases like Hoffman State's that the degree of vagueness scrutiny, the degree of indeterminacy that the Due Process Clause tolerates with respect to any statute, depends on the nature of the enactment. And it has instructed that courts should not apply this test mechanically, but should consider the functional purposes that the Due Process Clause serves, namely fair notice and fair enforcement. So, for example, criminal laws are subject to more stringent scrutiny than civil laws. Laws that regulate businesses are subject to less stringent scrutiny than laws that regulate individuals. And laws that regulate speech are subject to more stringent scrutiny than laws that regulate conduct. And our contention here is that in this case, the District Court should have considered the fact that under New Hampshire's system, police officers can initiate prosecutions on their own initiative without the participation of a licensed attorney, that criminal defendants are not entitled to indigent defense representation, and that there is no right to jury trial, and that the absence of those procedural checks and balances increases the danger that the statute's sweeping and shifting standard will lead to arbitrary or selective enforcement. Now, I understand the government's argument here essentially to be that on a facial vagueness challenge, the court can consider anything outside of the statutory text. But I think that's an overly reductive analysis, and the Fourth Circuit's en banc decision in Manning v. Caldwell is a good example of this. There, the Fourth Circuit was looking at a civil interdiction statute for habitual drunkards. And the question was whether that statute should be subject to stringent scrutiny as a criminal restriction or less stringent scrutiny as a civil restriction. And what the court said is that even though the statute itself did not assign criminal penalties to the civil interdiction order, the fact that it could serve as a predicate offense for criminal convictions down the road meant that, in effect, the statute had criminal penalties. And so for that reason, the nature of the statute required a more stringent vagueness test. So our position here is that because the statute provides very few procedural protections for defendants, a more stringent vagueness test was appropriate, and the district court erred in refusing to consider that essentially. Now, even if the district court was just applying the normal test... So if someone is convicted of this, is it listed on their BCI? Your Honor, I regret I don't know the answer to that question. I'll be happy to provide a post-argument briefing letter to address that. I guess I'm trying to figure out if it's explicitly considered a prior conviction. So, Your Honor, my understanding, at least, is that with regards to, for example, in Mr. Freeze's case, if a defendant is out, for example, on good behavior, that a conviction under the criminal defamation statute could subject them to imprisonment. So there certainly are circumstances where this statute could lead to imprisonment as a predicate offense under, for example, a good behavior condition. But we'll be happy to address in a post-argument letter whether the statute could be considered a predicate offense for later convictions. Even if, though, the court simply applies the test for criminal restrictions on speech, we think the act is unconstitutionally vague. And the reason for that is that the act simply imports the entire common law of civil defamation into this criminal statute. And the common law of criminal defamation is simply too general and undefined a concept to govern a criminal restriction on speech. And I think the Alaska Supreme Court's decision in Gottschall v. State is persuasive authority on this point. There, the Alaska Supreme Court was considering a criminal defamation statute very, very similar to the one at issue here. And it held that the statute's standard for defamatory meaning, which is essentially similar to the standard for defamatory meaning in the New Hampshire statute, was unconstitutionally vague because what may be considered defamatory among some substantial or respectable minority of the public is at any given point of time there are going to be many, many, many standards because it's not a general reasonableness requirement. It could apply to any group of sufficient size. So doesn't that just provide a defense that it's because of the mens rea requirement of this crime, if there's any ambiguity that makes it less likely there'll be a conviction? Well, Your Honor, I don't think that the statute's mens rea requirement provides sufficient definition here. And I think the Supreme Court's decision in Scrooge v. United States is instructive on this point. There, the court was considering- Tell me what word in the statute you think, what term in the statute you think is vague. The calls into public hatred, contempt, or ridicule, which essentially imports the New Hampshire common law defamation standard. But he can only be guilty if he purposely communicates knowing that it will cause public hatred, contempt, or ridicule. If he tells the jury, I didn't think they would ridicule for that, then he gets off. Well, Your Honor, what the Supreme Court said in Scrooge and later again in Smith v. Gogan is that an intent requirement cannot save a standard that is fundamentally vague. And so in Scrooge, the statute at issue was a federal statute that made it a crime to willfully conspire to violate someone's constitutional rights. The Supreme Court interpreted the statute to include a specific intent requirement, but what it said is the predicate offense, whether someone was violating someone else's constitutional rights, had to be specifically defined by a court decision. Let me try some context here. This exact same, as I understand it in New Hampshire law, if you say something that will subject faults about some other person, private citizen, that causes them to be subject to ridicule, you're liable for any damages caused if you were negligent when you did it. That's how I understand the current law. Conversely, if you want to get punitive damages from them, if they want to get punitive damages from you, they're going to show you were reckless because of New York Times and Welch and Gerrits. And then this just says, if you want to bring a criminal demeanor, if you want to go above even punitive damages, you've got to show actual knowledge. What's wrong with that sort of tiered approach to defamation recovery? All of them have the exact same thing you say is vague, which is the classic 200-year-old formulation of public hatred, contempt, or ridicule. Well, Your Honor, an actual knowledge requirement can provide some definition for a notice claim, but with regards to providing instructions governing law enforcement, a knowledge requirement is not going to substantially restrict their discretion to initiate a prosecution. They can always charge that someone had knowledge. And so what the statute really needs are some substantive definitions that are going to provide more constraints on the discretion of police officers to bring these prosecutions in the first place. And what's often going to happen in practice in these cases, if you have an uncounseled defendant who doesn't have the resources to hire a criminal defense lawyer, a police officer is coming in saying that they violated the statute, the natural response in that circumstance is going to be to plead guilty, regardless of whether or not they have the knowledge. And so, as a practical matter, the power imbalance between the prosecution and the defendant in cases like these, especially where there's no right to a jury trial, is going to result in convictions even where the prosecution was improper. And I think a good example of that, unfortunately, we weren't able to get into the record because the district court dismissed the case, was a case in which a woman was defending against a criminal prosecution in court. She maintained that the evidence could not be admitted because it had been introduced subject to an illegal search. And immediately she was charged with a criminal defamation violation, and she was convicted. I think, you know, with substantial scrutiny of that kind of charge, that charge would not have gone forward. It would have been legally insufficient. That's not what happened. It was just railroaded through. And that's what's going to happen because these procedural protections are not in place here. So in the absence of those procedural protections, what is necessary is a more definite standard for conduct. And similarly, in Smith v. Gogan, I would just draw the court's attention to that case, there you had a statute that prohibited contemptuous treatment of the flag, and the government tried to save the statute by saying, it requires intentionally contemptuous treatment of the flag. And the court said that can't save the statute because fundamentally the statute grants too much discretion to police officers and those kinds of intent or knowledge requirements are going to be inferred by the jury. So for the same reason the Supreme Court said a knowledge requirement couldn't save the statute in Smith, it can't save the statute here. Lastly, I'd just like to address our argument that the district court erred in refusing to consider any of the evidence regarding the acts enforcement or the enforcement of similar acts. The district court dismissed this case three days before the close of discovery. The government takes the position that courts are never permitted on a facial vagueness challenge, essentially, to consider any sort of extrinsic evidence about the enforcement of the act. But respectfully, that conclusion is incorrect. There are a long list of Supreme Court and circuit court decisions that do consider enforcement history to inform the vagueness analysis. Now, the enforcement history is not controlling, it's not dispositive. If the statute is facially clear, misapplication is not going to result in the statute being held unconstitutionally vague. And similarly, if the statute is obviously vague, the fact that officers have exercised their discretion with wisdom is not going to save it. But in a borderline case, the evidence can and should be considered. And that's what we maintain here. May I ask you a factual question, Counselor? Based on what happened here, your client made these statements. The police officer who was the subject of those statements complained. The police investigated, made a determination that it wasn't correct. Was your client Mirandized before they started questioning him? Your Honor, I don't know whether our client was Mirandized before the questioning started, but we can certainly find that out. My understanding is essentially what happened is they indicated that they were going to charge him for this, and our client voluntarily came to the station and placed himself, allowed them to place him under arrest at that time. So it was not a situation where they went to his home. He came in voluntarily and said, I understand that I'm being charged with this, and you can arrest me if that's what you're going to do. But they only arrested him, I mean, they arrested him after he had admitted that the statements were false. He did not admit the statements were false, Your Honor. Our client always maintains that he believed the statements to be true and that he was arresting him. Essentially what he was saying is he went to Chief Shoup, and he said that Officer D'Amato had engaged in these unlawful actions towards him and that Chief Shoup had done nothing. And so he believed that when he said that Chief Shoup was covering up for Officer D'Amato, he was basing it on his experience, and he stood behind that the whole way through. And the New Hampshire Department of Justice similarly found that there was no evidence in the record that Mr. Fries believed his statements to be false. And so I don't think at any point that Mr. Fries conceded the falsity of his statements. Okay. Thank you, Mr. House. If you would mute your audio and video, we'll hear from Mr. Garland for the state. Thank you, Your Honor. May I proceed? Yes. Thank you. May it please the court. My name is Sam Garland, and I represent the New Hampshire Attorney General in this matter. Resolving this appeal in the plaintiff's favor would require this court to deviate from established precedent. Both this court and the Supreme Court have consistently analyzed facial vagueness challenges based on the text of the challenge provision and any narrowing construction without consideration of who enforces the provision or how it has been or could be enforced. As the D.C. Circuit has put it, the vagueness analysis is objective. It involves only pure questions of law, and it turns on the tools of statutory interpretation. The question is whether the term at issue provides a discernible standard when legally construed. Moreover, this court noted in McKee that the mere fact that the provision requires interpretation does not make it vague. The statute is unconstitutionally vague only if it prohibits an act in terms so uncertain that persons of average intelligence would have no choice but to guess at its meaning in modes of application. That's the standard that, upon reflection, the district court applied in this case. We believe that was correct, and we think this court should apply the same standard and affirm that decision. I want to talk briefly at the outset about some of the general concerns about arbitrary enforcement and chilling speech that sort of permeate the opposing briefs in this case, and I do think caught the district judge's attention, particularly during the first round of motions or first motion to dismiss. Those concerns, our position is, have to be tethered to something indeterminate in the statutory language. It is not a freestanding vagueness claim to say, well, this statute could be arbitrarily enforced based on some motivation to protect police officers or something along those lines, an inference that we wouldn't concede is fair to draw here, or that it would chill speech by virtue of this statute being prosecuted. We think that those concerns have to be tethered to something that is imprecise in the statutory language that makes it hard to enforce, that makes it likely to be arbitrarily enforced, or that makes it people uncomfortable saying things that might otherwise be protected because they're not sure whether it's going to be criminalized. Another point I'd like to make on that regard is that there's also a big difference between selective enforcement and arbitrary enforcement. In this case, as far as I can tell, the only real allegations, or at least allegations of a pattern of behavior, and they really come in the briefing, not in the complaint, are that police officers may be inclined to selectively enforce this statute. How is law enforcement supposed to determine what would tend to expose any other living person to public hatred, contempt, or ridicule? I mean, it's odd in this political environment that those are the words that the statute utilizes. Yes, Judge Thompson. So I think really going to Judge Kayada's point when Attorney House was arguing, that is the standard that is for civil defamation. It's been construed by the New Hampshire Supreme Court. It's something that law enforcement officers, regardless of whether they are prosecuting the crimes, would be making a determination with respect to for charging crimes, for arresting. And so I think that standard, our position, as the district court found, is an objective standard. It's a standard the New Hampshire Supreme Court has set forth, requires looking at what a reasonable person would believe, not based on some sort of hypersensitive person, but what would be reasonable under the circumstances. I appreciate the concern you're expressing, because I do think it's the same concern that the Alaska Supreme Court, to some extent, expressed in Gottschalk. There are some distinctions there. We believe that was a much more subjective standard, that it didn't have the same mens reo requirement. But what I would point this court to, and it's actually a case that's cited in the reply brief that I'm embarrassed to say I didn't cite in our brief, is Ashton v. Kentucky. And that's a U.S. Supreme Court case from 1966. In there, the Kentucky criminal defamation statute defines defamation or criminal libel as any writing calculated to create disturbances of the peace, corrupt the public morals, or lead to any act which, when done, is indictable. The Court of Appeals, after the defendant was convicted there, construed the statute more narrowly and said, no, this statute should be construed as common law defamation, similar to New Hampshire's statute, though I would say still broader. The U.S. Supreme Court on Appeals said, you can't do that. We're not going to look to how the Court of Appeals in a criminal case construed it, but rather to what it was, how it was construed in the first instance. And the Supreme Court said, when a defendant is tried and convicted under a broad construction of an act, which would make it unconstitutional, the conviction cannot be sustained on appeal by limiting construction, which eliminates the unconstitutional features of the act. Now, I think that statement probably falls in the debatable area of whether it's a holding or dictum. But I can say that the Eighth Circuit and Maurer and two District of Kentucky cases have pointed to that and said, Supreme Court wouldn't have drawn this distinction if it were particularly concerned about the traditional standard for defamation that exists in 644-11. That that distinction must have some meaning there. And so I would point you to that case, as well as the two District of Kentucky cases that I believe are cited in our brief, where more recent challenges than in Alaska to criminal defamation statutes arose. And the District of Kentucky judge there conducted an analysis that we think is correct and consistent with what judge will plant it here. Mr. Garland, are you able to shed any light on, under New Hampshire law, what the interaction is in this context between this statute and the malicious prosecution tour? Generally, if a government official, such as a prosecutor or a grand jury, initiated the criminal proceeding, they would have some immunity to a tort charge for malicious prosecution. But in this, if a police officer or a private citizen commences one of these criminal misdemeanor charges, if they're abusing the statute and there's no basis for it, are they liable for malicious prosecution under New Hampshire law? So two responses to that, Judge Kayada. Generally speaking, I'm not sure if that's an issue that the New Hampshire Supreme Court has specifically resolved. If the police officer who initiates the one who prosecutes it is also the police officer that arrests the person or charges the person. What I can say, based on my anecdotal understanding, is that that's rarely the case. Almost always the police prosecutors are specific individuals. Sometimes they're attorneys, oftentimes they're not, who serve a function as a prosecutor within a particular police office. And so we wouldn't be the same person that was investigating or choosing to bring charges. And so perhaps, sorry. But as I understand this law, John Doe, private citizen, could go out and initiate one of these criminal proceedings against his neighbor. I think he could, or he could at very least report that. I think what commonly happens is it's reported to the police department, which then investigates it. I don't see anything. You tell us we have to stick with the text. I didn't see anything. Am I correct that John Doe could just commence one of these proceedings by filing a complaint? That I would have to follow up on, Judge Kayada, candidly. I'm not sure the specific answer to that. What I can say is that the police prosecution. Wait, before. You're aware that in New Hampshire, private criminal prosecutions are permitted. Yes, Judge Howard. So your specific answer is that you think there might be some distinction when it comes to prosecuting this under this statute? I don't quite understand your answer. Sorry, Your Honor. It may be because I'm not saying one that's understandable. So, yes, Judge Howard, I am aware of private prosecution of crimes. I think that the distinction I was trying to draw is that the person who initiates it oftentimes filing a complaint or even before that the arrest and charge is very often different from the person that would be actually prosecuting it because it is usually a police prosecutor, if not a county attorney. There may be circumstances, and I don't know, as a matter of fact, where the same private individual who initiates it is also prosecuting it as a private individual. I candidly do not know the answer to that. But what I can say, though, is that if a law enforcement officer is making some sort of determination in the investigation phase that is unrelated to the prosecutorial determination, and that's separate from the person who's prosecuting it, I do think a malicious prosecution claim would lie there. And, in fact, in this case, Mr. Freese settled what I presume would have been a malicious prosecution claim in relation to his second charge. And that's not, I don't think, in the complaint, but it is on page 58 of the appendix. And so it's not like if this statute continues to operate in the way that it does, people who believe they're aggrieved under it are without recourse. They can raise factual bases to defend the case. The mens rea requirements, we think, are very high. They're higher than what New York Times v. Sullivan requires. They can raise constitutional defenses to the extent they believe they are being targeted for viewpoint discrimination or something along those lines. And they can also bring an affirmative action for damages against wrongdoers on an as-applied basis. And so it isn't as if there is no recourse here but for striking this statute down. Do you know if this person was Mirandized? Judge Thompson. Do you know if he was Mirandized when he went to the station? That I don't know, Judge Thompson. With respect, I believe, do you mean with respect to the second prosecution, the one that ultimately was dropped? Yes. That I'm not sure. It may be in the appendix. I'd have to review it. And so, like, Attorney House, I'm happy to update the court on that through a letter or something of that nature. Go ahead. Let me ask you a question about a different issue. So in the statute where the definitional section that public includes professional or social group, group might not be the right word, is it your understanding that that needs to be charged in the complaint or is it an affirmative defense or is it neither? Your Honor, I don't believe that's an element that needs to be charged in the complaint. I'm not sure if there's a definitive construction on that. But what I can say is that it is akin to the common law definition or the common law understanding that the group can be smaller than the general public at large. So it was just a predicate question. So my real question is, I think it's under Thompson and maybe under some of the other New Hampshire cases, this group, this association has to be substantial or respectable. So is that an affirmative defense or does it have to be proven beyond a reasonable doubt? That's an interesting question, Judge Howard. Again, I don't know that there's been, I believe there hasn't been a definitive construction of that. What I would say is that it at very least would be an affirmative defense, I believe. And the Supreme Court has made clear that, the New Hampshire Supreme Court, that it is an objective inquiry about whether it would offend or tend to expose to hatred or ridicule a person within that group. Do we know the definition of respectable as it's used in those cases? I'm not sure, Your Honor. The two standards that we cited in our brief are from Boyle and from Thompson. And I don't believe either of those cases specifically speak to respectable. And so I don't, I'm not sure, Your Honor. What I'm getting at here is, and I know this is not your argument. In fact, you would say we don't go this far. But if we do put this in the context of a state like New Hampshire, which allows private criminal prosecutions, and the determination is being made up front by the person bringing the charge about whether the group is respectable or not. I mean, how would somebody making a statement calculate what some other private citizen is going to think about that word? So, Your Honor, I think in the lion's share of cases, or at least in the examples that I'm generally aware of here, the plaintiff is not alleging and I'm not aware of any instances where that determination was really in question. I mean, if we look to the first, I guess I'll give a specific example and then maybe perhaps a more theoretical one. If you look to the first charge for criminal defamation that Mr. Freese was subjected to, he suggested that someone, a life coach on Craigslist, had potentially molested people and that committed crimes that he didn't commit. I don't think it's a close question, however you define that group, whether it's the general public at large or perhaps life coaches or commenters or people accessing Craigslist, that suggesting that someone molested somebody or suggesting someone committed crimes would subject them to hatred and ridicule within that group. More generally, I think often it can be determined by the group that the particular alleged victim would be in. I mean, if you are suggesting that, falsely, that a doctor is out there operating without a license or being a quackery or a hack or something along those lines, I think it would be a question among the medical profession or something along those lines, similar with an attorney. In the law enforcement context, whether a... What's a social group? Excuse me, Judge Thompson. What's a social group? What's the boundaries of a social group? I think that would, again, ultimately go... That's an interesting question. I think ultimately that goes to the group that a person would typically socialize with. And so if we're talking about... And ultimately may go back to the professional community more than anything else. I understand the concern there. The one thing that I would point the court to, though, is the idea that this being objectively discernible is not controversial that I'm aware of in certain New Hampshire Supreme Court precedent or other precedent considering these sorts of laws. And I don't believe those were the specific concerns that the plaintiff was raising here. What I would say, and if this court is in a position where it's not sure what the answer to those questions are, and if I haven't explained it in a way that the court is satisfied with or that precedent means that you don't have to... That you can take the objective standard as it is. The answer isn't striking down the statute. Case law, lots of persuasive, and I believe some controlling authority suggests that asking the New Hampshire Supreme Court to define those terms would be the correct answer. And so I'm not asking for, nor am I advocating certified questions here. But our position is that vagueness is a legal determination. And if you're concerned about some potential vagary in the language of the statute, then I don't think the answer is saying, yep, it's vague, strike it down. It would be to ask the New Hampshire Supreme Court to clarify. Again, something I don't believe is necessary, but would be the option that I would advocate. Judge Thompson, Judge Kayada, additional questions of Mr. Garland? I'm still trying to figure out what social group of which the victim of the defamation is a member. I'm not sure I have an answer to that, Judge Thompson, specifically. It's candidly not something that had come up previously and that I didn't think about in advance. I mean, I do think, you know, if I may, Judge Howard, I may be out of time. Go ahead. I mean, there are defined social groups in the community, things like the Rotary Club, things like, you know, different bar associations, perhaps that's professional. But maybe like the Rotary Club, mourning groups, church groups, things along those lines. And so you can certainly think of examples that would not be an individual person, would not be based on subjective considerations. And so off the top of my head, those would be the sorts of things I think would reasonably be construed as a social group, but not something that I think either side has spent much time litigating in the context of this case or advocating. I'm just trying to figure out in terms of notice to law enforcement as to what's enforceable in this instance. I mean, it seems like it's elevating. I mean, you just gave me some examples of some social groups. It seems like it's giving elevated protection to some and not others who may not be members of so-called recognized social groups. I do want to caveat this, if I may, Judge Howard. I may be running well beyond my time. Please. Isn't the answer, don't we just construe this broadly and be done with it, social group? I mean, if you say something about me that is very defamatory and two of my neighbors hear it and think less of me and ridicule me, I've got a defamation claim. I don't. That's my social group. I think that's right, Judge Kayada. And what I would say is if you have concerns about that specific definition, that does deviate some from the definition of the community that the New Hampshire Supreme Court has adopted for the general civil defamation. And to the extent, and I believe the plaintiff has argued that that definition is narrower and more malleable to the extent you have concerns about that. I think you can turn to what the New Hampshire Supreme Court has said generally about about similar concepts in the civil defamation context, which I believe is much more akin, Judge Kayada, to what you were just saying. Thank you, Mr. Garland. If you would mute your audio and video, Mr. House, you've reserved three minutes. Thank you, Your Honor. In response to Judge Thompson's point, we can't figure out what a social group means either. And we've consistently argued both in the district court and in this court that the definition of social group is completely undefined and provides another basis for vagueness. In response to my friend across the aisle's contention that there are no closed cases here, respectfully, that's not the case. Again, this would have been in the record if the district court hadn't dismissed the case three days before the close of discovery. But there were criminal defamation prosecutions against someone who said that a neighbor spanked their child. There was a criminal defamation prosecution against someone who said that somebody was in a non-monogamous relationship. These are questions that even in the civil context courts struggle to determine whether a false statement about someone is defamatory within the meaning of civil liability. And sometimes in the civil context, we do have to draw those hard lines to ensure that people are adequately compensated for injuries to their reputation. But in the criminal context, a much higher standard is required, and that's because criminal convictions do carry penalties. As Mr. Freese's prosecution in this case demonstrates, he was subject to potential re-imprisonment if he were convicted under this criminal defamation statute. In response to Judge Tejada's point about the circumstances under which somebody could bring a malicious prosecution or false arrest claim, in certain circumstances, in Mr. Freese's case in particular, where you have a New Hampshire Department of Justice memo saying that the police department was completely misguided in bringing this prosecution because there was no evidence that Mr. Freese knew the statement to be false, in those cases, perhaps you can bring a malicious prosecution claim. But when a defendant simply wants to say, no, my speech was not defamatory within the meaning of the criminal law, there's essentially no standard that the courts could apply to determine whether or not a police officer or a prosecutor or a private citizen had probable cause to initiate that prosecution. And it's really the absence of that standard for defining what conduct is prohibited that makes this law unconstitutionally vague. And I know I keep coming back to Smith v. Gogan, but I think that case is really important because there, what the Supreme Court said is, there is no way that the Massachusetts legislature intended to criminalize all casual treatment of the flag. Lots of people treat the United States flag in a casual manner these days. That can't be what the crime is, but the statute provides no basis for discerning what should actually be subject to criminal sanction versus what should not be subject to criminal sanction. That's exactly the problem presented by the statute. And finally, I would just note that we are concerned in this case both with arbitrary and with selective prosecution. And so in closing, I would just emphasize that Mr. Fries has at least plausibly alleged that New Hampshire's criminal defamation law is too sweeping and indeterminate to define a criminal restriction on speech, and that this court should reverse and remand so that the case can be adjudicated on a properly developed record. Thank you. Thank you. That ends argument in this matter. Attorney Haas and Attorney Garland, you should disconnect from the hearing at this time.